THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* MARGARO VALENTÍN VÁZQUEZ, Defendant and Appellant.

No. 15404. Argued November 2, 1953.—Decided January 18, 1954.

*Héctor Lugo Bougal* for appellant. *Juan B. Fernández Badillo, Acting Attorney General,* and *Rafael L. Ydrach Yordán, Assistant Fiscal of the Supreme Court,* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Margaro Valentín Vázquez was charged with arson in the first degree. After a trial, the jury found him guilty of the crime charged and the former District Court of Puerto Rico, Ponce Section, sentenced him to a term of from 10 to 18 years' imprisonment in the penitentiary.

The first error assigned on appeal is that the trial court erred in failing to instruct the jury "that if a building has been merely charred,[1] the offense of arson has not been committed." Section 398 of the Penal Code defines this offense as "the wilful and malicious burning of a building of another with intent to destroy it." Section 402 of the same legal corpus provides, likewise, that "to constitute burning within the meaning of this chapter,[2] it is not necessary that the building set on fire should have been destroyed. *It is sufficient that fire is applied so as to take effect upon any part of the substance of the building.*" (Italics ours.)

The instruction which serves as ground for the first assignment was timely requested by the defendant and denied by the court on the ground that the same had been transmitted in the special general instructions. After the trial, the defendant specifically excepted to each and every one of the instructions given, including the failure to transmit the ones in which he was particularly interested. In his instructions to the jury the judge charged that "to constitute burning it is not necessary that the building set on fire be destroyed,

---

[1] *Chamuscar* (to char), according to the *"Diccionario de la Lengua Española,"* published by the *"Real Academia Española"* 17th ed., 1947, means: *"Quemar una cosa por la parte exterior."* (To burn superficially; to parch the surface of by heat).

[2] The Spanish text says *"artículo"* but the English text prevails (see § 13 of the Civil Code, 1930 ed.).

for it is sufficient that fire be set so as to take effect upon any part of the substance of the building...";  that "if you, gentlemen of the jury, from the evidence introduced reach the conclusion that... this defendant... wilfully and maliciously and with the intention to destroy it, set the house on fire, and burnt it... at nighttime, and this house was not owned by the defendant but by a third party... the defendant must be declared guilty of arson in the first degree";  and that "if... from the conflicting evidence introduced, you reach the conclusion that this defendant did not set the building or the house in question on fire nor burnt it at nighttime then... the defendant should not be found guilty of arson in the first degree..."

The instructions thus given were in consonance with the law and not only is this so but, as the trial court stated upon denying it, they embraced the instruction requested.  As we have seen, § 402 of the Penal Code provides that "it is sufficient that fire is applied so as to take effect upon any part of the substance of the building."  The court so stated quite clearly.

In the state of California, where until 1929 its § 451 of the Penal Code was identical with our § 402, its highest court stated in *People* v. *Haggerty*, 46 Cal. 355, citing from Bishop on *Criminal Law*, § 325:  "The word 'burn' enters into the definition of arson at common law;  and it occurs in many statutes.  It means to consume by fire.  If the wood is blackened, but no fibers are wasted, there is no burning; yet the wood need not be in a blaze.  And the burning of any part, however small, completes the offense, the same as of the whole.  Thus, if the floor of the house is charred in a single place, so as to destroy any of the fibers of the wood, this is a sufficient burning in a case of arson."  It further stated that:  "There was evidence tending to show that a spot on the floor was charred, so as to destroy the fibers of the wood by the fire set by the defendant;  and there was no evidence directly contradicting that fact.  To some of the witnesses, it is true,

the spot only appeared to be blackened, and not charred. But we cannot say that the verdict was so contrary to the evidence as to justify us in reversing the judgment on that account." See also *People* v. *Simpson*, 50 Cal. 304.

■ The second error charged is that the trial court erred "in failing to give instructions to the gentlemen of the jury on the offense of attempted arson." As we shall see hereafter the evidence for the prosecution as well as for the defendant showed the consummation of the crime of arson. Consequently, an instruction on attempt to commit arson was not justified.

■ The appellant also contends that the trial court erred in failing to instruct the jury "that if they believed that the defendant threw the lantern thus setting fire to the house but without the intention to cause that fire, the defendant should be acquitted." The latter was denied by the court because neither the "evidence for the defense nor the evidence for the prosecution supported this instruction." From our own examination of the evidence, we find that said conclusion is correct. In brief, the evidence for the People was that between 7 and 8 in the evening of the occurrence imputed to the defendant, he and Guillermo Burgos León engaged in a fist fight near the place where they lived, because the defendant was boasting of having had intimate relations with Burgos' wife; that subsequently, at about ten in the evening, the witness, Sergio Almodóvar Pinedo, who lived nearby, heard, while he tuned his radio, a person passing by and the noise of matches; that then he looked out and saw the defendant lighting a match; that the wall of Burgos' house caught fire; that then Almodóvar cried "fire" and he called Burgos and Rosa Mattei; that the witness picked up a basin and started to put out the fire; that he asked the defendant "Guambí, what are you going to do?" and he answered "Let that scoundrel burn up"; that later the police came and found the lantern at the same place where the defendant set the fire; that the rear part of the house was partially burnt;

that he knows that "a part of it was burnt because he put his hand on it and it became smudged"; that Guillermo Burgos León heard when Sergio Almodóvar was crying "fire" and he got up; that the smoke was already penetrating the room and that he heard the defendant saying "if anyone comes out that door I'll chop his neck off, I'll kill him like a dog"; that Burgos jumped out the window and grabbed Guambí by the back, the latter started to run and Burgos saw that he had a machete; that as he ran he waved the machete; and that Burgos threw a bottle at him to protect himself when the defendant ran towards him with the machete. When Burgos was asked whether he had not seen that the defendant carried a lantern in the other hand he answered "the lantern was already here when he first set the house on fire... let me explain. When I woke up he had already set the house on fire and he threw the lantern at me... When he came with the machete, how much later? After setting the house on fire. The house was burning."

The evidence for the prosecution also shows that the lantern was found next to the scorched wall, next to the wall which had received heat and flames; that "it smelled very much of gas there"; that the defendant "had spread enough gas"; and that "Corporal Pérez passed his hand there and it was smudged."

The evidence for the defense consisted solely in the defendant's own testimony. He testified that he had had sexual relations with Rosa Mattei, Burgos' wife; that he heard that Rosa and Burgos were quarreling and that when he (the defendant) was going through the alley, Burgos struck him with his fist and he started running because he was weaker, and that Burgos pursued him till he reached his house; that when defendant realized that Burgos wanted to go in "and when I saw that he was going to jump on me, I took the lantern which was the first thing at hand and I threw it at him, and he grabbed a knife and when he was coming towards me with the knife inside my house I grabbed the machete..."

When his counsel asked him whether he had heard the witness Almodóvar Pinedo testify and whether it was true that he had tried to set the house on fire with the gas container, he answered "Never... I did not strike him because I threw the lantern at him but it struck against the house"; and that the lantern was lighted because it was about 8 o'clock.

From the former excerpt it may be seen that there was nothing in the evidence for the prosecution or for the defendant tending to show that the house where Rosa Mattei and Burgos lived took fire because the defendant threw a lantern at Burgos. The evidence for the People, as has been seen, tended to show that the defendant set the house on fire before Burgos woke up, before the latter saw the defendant with the machete and before the defendant had thrown the lantern at Burgos. And that of the defendant merely tended to show that he threw the lighted lantern at Burgos, but in no way contradicts the fact that the house had already caught fire. Neither does it show that the fire began as a result of having thrown the lantern. Under the circumstances, the trial court did not err in refusing to give the instructions which are the object of this assignment.

█ In the last assignment it is held that the verdict is contrary to the evidence. We have carefully read the evidence and in our opinion the verdict rendered is supported thereby. The judgment appealed from will be affirmed.